IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Felix Iraheta | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:26-cv-01355 |
| | § | |
| Montgomery County Texas; Deputy Joseph | § | |
| Michael O'Neill; Deputy Nicholas Anthony | § | |
| Scinicariello; Specialist Timothy J. Boerema; | § | |
| Deputy Davis (BWC 16104); John Doe (BWC | § | |
| 13603); John Doe (BWC 15438); John Doe | § | |
| (BWC 14218); Hospital/Scene John Doe | § | |
| Deputy; Jail John Doe Officers 1-2; Emily | § | |
| Waddington (LVN); Etuge Anyangwe (FNP- | § | |
| C); Zakari Lobe (LVN); Ather Siddiqi, MD; | § | |
| *Defendants.* | § | **Jury Demanded** |

DEFENDANTS MONTGOMERY COUNTY AND  O'NEILL'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

I.    PRELIMINARY STATEMENT

1. Admit that officer extracted Iraheta from this vehicle in their capacity as law enforcement officers, the date, and that Iraheta suffered a dislocated shoulder, deny the remainder.

2. Admit the location, deny the remainder.

3. Admit the glenohumeral dislocation occurred while Iraheta was in custody, deny it occurred during extraction, cannot admit or deny the fracture, deny the remainder.

4. Admit Iraheta was in custody, deny the remainder.

5. Admit Iraheta brings claims against the County, deny the claims have any factual or legal merit.

6. Admit generally.

7. Admit that some claims may escape the *Rooker-Feldman* Doctrine, *Heck v. Humphrey* line of cases, and *Younger* abstention, cannot admit or deny at this time if the included claims fall into that category.

8. Deny Iraheta is entitled to any damages.

## II.    PARTIES

9. Cannot admit or deny.

10. Admit.

11. Admit.

12. Admit generally, but the statement is circular.

13. Cannot admit or deny at this time.

14. Admit the name, cannot admit or deny the remainder at this time.

15. Admit the name, cannot admit or deny the remainder at this time.

16. Admit the name, deny there was any reason to intervene, aver that if there was a reason to intervene Boerema did not have a reasonable opportunity to prevent harm, cannot admit or deny the remainder at this time.

17. Cannot admit or deny at this time.

18. Cannot admit or deny at this time.

19. Cannot admit or deny at this time.

20. Cannot admit or deny at this time.

21. Cannot admit or deny at this time.

22. Cannot admit or deny at this time.

23. Nothing to admit or deny.

24. Admit.

25. Cannot admit or deny at this time.

26. Nothing to admit or deny.

27. Admit Waddington completed the suicide screening form, cannot admit or deny the remainder.

28. Cannot admit or deny at this time.

29. Admit Lobe provided an ibuprofen, cannot admit or deny the remainder at this time.

30. Admit generally to Doctor Siddiqi's role, cannot admit or deny the remainder at this time.

31. Nothing to admit or deny.

32. Nothing to admit or deny.

### III.    JURISDICTION AND VENUE

33. Admit this Court has subject mater jurisdiction over the claims forming the basis of this suit.

34. Admit this Court has jurisdiction over related state law claims.

35. Admit this Court is the proper venue for this suit.

### IV.    FACTUAL ALLEGATIONS

A. Stop Context: Confined Market Street Roadway and Immediate Containment

36. Deny the characterization of a "short distance" admit the remainder.

37. Cannot admit or deny.

38. Admit, deny that no objective speed-measurement device was used as Boerema's vehicle contained speedometer. Further aver that Iraheta did not just hit a cone, and drove through a closed street entrance designated by cones, dragging the cone with him and sped toward workers hanging Christmas lights (the reason the street was closed).

39. Admit generally, aver that Iraheta made another turn after Boerema initiated the stop.

40. Admit other law enforcement was present when O'Neill arrive, deny the remainder.

   a. Admit there was at least one FTO present, which may be whom Iraheta refers to as a trainee. Deny Iraheta's vehicle was surrounded. Deny it was not an emergency; a non-compliant intoxicated driver behind the wheel of a running vehicle can turn deadly without warning.

   b. Deny it was not an emergency; a non-compliant intoxicated driver behind the wheel of a running vehicle can turn deadly without warning.

   c. Admit at least one FTO was present, deny it was O'Nell's FTO.

   d. Denied.

41. Admit Iraheta stated something to that effect, cannot admit or deny whether he actually called his wife, and deny that calling his wife is a get-out-of-jail-free card for an intoxicated driver after he was pulled over for driving drunk.

   B. Escalation Decision and Two-Officer Extraction

42. Admit they spoke briefly, admit Iraheta refused to answer some questions, deny Iraheta's response was ambiguous, when told to step out he said "no", when told three more times, he continued to refuse. Deny Iraheta did not have a meaningful opportunity to comply.

43. Deny.

    a. Admit, aver this considerations are not relevant to a soft hand extraction of a non-compliant drunk driver sitting behind the wheel of his car.

44. Cannot admit or deny at this time.

45. Deny the characterization as "rapidly" but after Iraheta repeatedly refused to comply with officers simple verbal commands to get out of his vehicle, officers used soft hands techniques to remove him.

46. Deny, aver Plaintiff appears to be misquoting the report referring to the B-pillar, not the vehicle's frame.

47. Deny.

48. Deny.

    a. Defendants cannot respond to this paragraph because they do not understand what Iraheta alleges in the paragraph. .

    C. Post-Injury Handling at the Scene:  Continued Force After Injury Becomes Obvious

49. Admit Iraheta was pulled to the ground and then stood up, cannot admit or deny the remainder but do not believe he was injured in the extraction.

50. Deny Iraheta had an obvious injury, cannot admit or deny the remainder at this time.

51. Deny Iraheta had an obvious injury, admit he was placed in O'Neill's vehicle.  Admit Iraheta continued to refuse simple commands and was told he could be charged with resisting search.

52. Deny Iraheta had an obvious injury or that officers observed him to be injured. Deny anyone had a reason to intervene or had any opportunity to prevent any harm. Deny insulation that officers did not secure medical assessment.

   a. Admit.

   b. Deny Iraheta was able to "clutch his left shoulder" considering he was in handcuffs. Admit officer likely heard him complain but cannot admit or deny what each individual officer heard. Deny Iraheta screamed and only elevated his voice when he said "oh s…." when placed in the back of the vehicle.

   c. Deny Iraheta had an obvious injury; deny officers did not summon medical help.

   d. Cannot admit or deny at this time, but admit Iraheta was complaining.

   e. Admit Davis was an FTO and present during the DIC warnings, admit they had to speak over Iraheta, admit Iraheta stated his shoulder was injured and/or dislocated deny the remainder.

   D. Transport to Hospital: Pain Complaints and Custodial Suppression

53. Admit Iraheta stated his shoulder is not right. Deny he "attempted" to get the attention of the officer, the officer was aware of Iraheta.

54. Admit O'Neill was listening to music, deny he turned it or that it impaired Iraheta's ability to communicate. Deny Iraheta could not communicate distress and aver he was being transported to the hospital.

   E. Hospital Arrival: Obvious Injury and Custodial Control

55. Deny Iraheta's injury was obvious, but admit another officer noticed an apparent issue with his shoulder.

56. Cannot admit or deny the content of the referred to document, but admit that the information is generally accurate.

57. Admit the injury was not noticed until Iraheta was at the hospital, deny the remainder.

    a. Admit BWC16104 captured Iraheta exiting the vehicle at the hospital, deny the remainder, admit Iraheta was in custody, deny the remainder.

    b. Admit officers stayed near Iraheta as he was in custody, deny the remainder.

    F. Hospital Hallway Movement: Threats, Dragging, and Bed Restraint

58. Deny Iraheta made any attempt to comply with instructions and directions, he continued to deny simple commands such as to go to the room he was assigned, to sit on the bed, or put his legs up.

59. Deny the characterization, rather, officers were trying to impress on Iraheta that if he was actually injured he should follow simple instructions and allow the staff to care for him to avoid forcing officers to manually move him, which may result in further injury.

    a. Deny the characterization, rather, officers were trying to impress on Iraheta that if he was actually injured he should follow simple instructions and allow the staff to care for him to avoid forcing officers to manually move him, which may result in further injury.

60. Admit O'Neill used Iraheta's other arm to guide him to his assigned hospital room because Iraheta continued to refused simple commands such as stand up and walk to your hospital room.

61. Admit O'Neill moved Iraheta's legs onto the bed, deny it was anything other than de minimis force and deny that Iraheta was compliant.  Further deny Iraheta's reliance on "assaultive resistance" as any sort of relevant metric.

G.  Compelled Blood Draw:  Restraint and Weight-Based Control

62. Admit.

   a.  Nothing to admit or deny

63. Admit O'Neill had to hold Iraheta's arm, but deny it was disproportionate to need or excess; rather Iraheta continued to resist and pull his arm away from the nurse.

   a.  To the extent complaining that he was in pain while continuing to act in a manner that necessitated officers to go hands on to assist Iraheta with following every basic instruction he was getting constitutes "visible pain", admit he was in "visible pain".  Admit the remainder.

64. Deny.  Aver, Iraheta continued to actively resist quite literally every instruction he was given.

H.  Diagnosis and Emergency Treatment

65. Admit.

66. Admit the approximate time frame, cannot admit or deny

I.  Denial of Sling, Removal of Monitors, and Forced Discharge

67. Cannot admit or whether O'Neill woke Iraheta, but admit he told Iraheta he was discharged and being transported to jail.

68. Deny.

   a.  Admit.

69. Deny there was a "physician-ordered sling", admit O'Neill told Iraheta that a sling was "not for pain management", deny the remainder.

70. Admit Iraheta was "cleared for jail" by the doctor, deny the remainder. Iraheta may be referring to the educational material provided at discharge.

J. Jail Book and Intake: Failure to Provide Stabilization Accommodations

71. Admit Iraheta was "cleared for jail" by the doctor, deny the remainder. Iraheta may be referring to the educational material provided at discharge.

72. Deny.

73. Admit the paperwork asks whether Iraheta had recently been involved in an accident. Cannot admit or deny the remainder because Defendants do not understand the allegations in the remainder.

74. Defendants are not sure which forms Iraheta is referring to so Defendants can only answer generally, but admit jail staff complete forms and booking. Deny Iraheta did not have a meaningful opportunity to review anything that he signed.

75. Admit.

76. Deny.

77. Admit.

a. Admit that outside records are scanned into detainees' charts, and that if no records exists "no records" may be displayed. Deny the remainder.

78. Admit the paperwork from the hospital was scanned in. Admit the jail medical staff would have known that the hospital doctor cleared Iraheta for jail.

79. Admit the jail and or jail medical staff immediately created an appointment for Iraheta the next day.

80. Admit, the appointment was cancelled, and aver it was cancelled because Iraheta was released from jail on 2/21/24, before the appointment was to occur. Deny the remainder.

K.  Subsequent Medical Treatment and Surgical Repair

81. Cannot admit or deny.

82. Cannot admit or deny.

83. Cannot admit or deny.

84. Cannot admit or deny.

L.  Awards, Incentives, and Institutional Reinforcement (municipal context)

85. Admit.

86. Admit that agencies emphasis DWI reduction, deny the remainder.

M. Notice Regarding Similar Extraction Conduct (Pre-Incident Context)

87. Admit the date, deny the remainder.

88. Admit notice of the incident, deny any notice of wrongdoing as no wrongdoing occurred.

89. Deny.

90. Deny.

N.  Recording Discontinuities

91. Deny.

O.  Alternate Pleading: Constitutional Framework for Hospital-Phase Force

92. Deny.

P.  Chronology Summary

93. Admit time stamps exist, deny the circumstances exist as characterized by the Complaint.

94. Admit time and date, admit officer's basic position, admit officers forcibly removed Iraheta, deny the remainder.

95. Admit Iraheta was handcuffed, deny the remainder.

96. Aver that that charges were threatened not because Iraheta did not move "quick enough," but rather because he continuously refused to comply with simple commands. Admit the remainder.

97. Deny.

98. Admit O'Neill had to guide Iraheta to his hospital room because he continued to refuse simple commands such as "stand up" and "walk to your hospital room", deny the remainder.

99. Admit O'Neill had to place Iraheta's feet on the bed because he refused to, and that O'Neill had to restrain Iraheta's arm for the blood draw because Iraheta continuously pulled it away from then nurse.

100.  Deny a "physician-ordered sling" existed, admit the remainder.

101.  Deny.

102.  Deny.

    a.  Admit Iraheta is making allegations, deny the remainder of the paragraph.

## V.    CAUSES OF ACTION

### COUNT 1

Excessive Force During Seizure—Extraction and Immediate Post-Injury Handling

*(Against Defendant O'Neill)*

103. Nothing to admit or deny.

104. Deny.

105. Deny.

106. Admit the B-pillar is used as leverage (which the Plaintiff may be referring to as the frame), deny the remainder.

107. Deny.

108. Deny.

## COUNT II

Excessive Force During Seizure-Extraction Participation and Post-Injury Handling

*(Against Defendant Scinicariello)*

109. Nothing to admit or deny.

110. Admit the B-pillar is used as leverage (which the Plaintiff may be referring to as the frame), deny the remainder.

111. Cannot admit or deny at this time.

112. Deny.

113. Deny.

## COUNT III

Excessive Force During Seizure—Post-Extraction Force Through Hospital Custody

*(Against Defendants O'Neill, Davis, and Hospital/Scene John Doe Deputy)*

114. Nothing to admit or deny.

115. Admit Iraheta asked the officers to stop, deny the remainder.

    a. Admit generally.

116. Admit Plaintiff makes these allegations but aver they are all without merit.

117. Deny.

## COUNT IV

### Alternative Excessive Force – Hospital Phase as Pretrial Detainee

*(Against Defendants O'Neill, Davis, and Hospital/Scene John Doe Deputy)*

118. Nothing to admit or deny.

119. Deny.

    a. Deny.

120. Deny.

## COUNT V

### Deliberate Indifference to Serious Medical Needs

*(Against Defendants O'Neill; Waddington; Anyangwe; Lobe; Siddiqi;*

*Jail John Doe Officers 1-2)*

121. Nothing to admit or deny.

122. Admit Plaintiff is making claims, deny they have merit and deny the remainder.

123. Deny.

124. Deny.

125. Deny.

126. Admit medical personnel had knowledge that Plaintiff was seen and diagnosed with injuries and had been cleared for jail by the treating physician, deny the remainder.

127. Deny.

128. Deny.

129. Deny.

130. Deny.

131. Deny.

## COUNT VI

### Failure to Intervene

*(Against Defendants Boerema, Davis, John Doe (BWC 13603), John Doe (BWC 15438),*

*John Doe (BWC 14218), and Hospital/Scene John Doe Deputy)*

132. Nothing to admit or deny.

133. Generally admit that officer(s) were present, deny the remainder.

134. Deny.

135. Deny there was any need for intervention and the remainder.

    a. Deny

## COUNT VII

### Municipal Policy and Custom Liability

*(Against Defendant Montgomery County, Texas)*

136. Nothing to admit or deny.

137. Nothing to admit or deny.

138. Deny.

    a. Deny.

    b. Deny.

139. Deny.

140. Deny.

141. Deny.

      a. Deny.

142. Deny.

## VI.    DAMAGES

143. Cannot admit or deny at this time.

144. Cannot admit or deny at this time.

145. Cannot admit or deny at this time.

146. Cannot admit or deny at this time.

147. Cannot admit or deny injuries at this time, but deny any of the alleged events occurred.

148. Cannot admit or deny at this time.

149. Cannot admit or deny at this time.

## VII.    REQUEST FOR ATTORNEYS FEES

150. Defendants request attorneys fees and costs be assessed against Plaintiff for bringing this non-meritorious action.

## VIII.   DEFENSES AND AVERMENTS

151. Individual defendants assert qualified immunity.

152. To the extent any of Plaintiffs' causes of action can be construed as state law based, Defendants assert official immunity, governmental immunity, election of remedies, and statutory caps.

## IX.   REQUEST FOR JURY TRIAL

153.   Defendants request trial by jury.

## X.   PRAYER

Defendants pray that this Court issue a take nothing judgment in their favor and award them costs and attorney's fees.  Defendants pray for all other relief to which they may be entitled.

Respectfully submitted,

BY:____s/ Daniel Plake_____
Daniel Plake
Assistant Montgomery County Attorney
Texas Bar No. 24062942
Federal ID No. 918023
Daniel.plake@mctx.org
501 N. Thompson St. Suite 100
Conroe, TX 77301
Phone:        (936) 539-7828
Facsimile:    (936) 538-8079
ATTORNEY FOR DEFENDANTS
MONTGOMERY COUNTY AND
O'NEILL

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2026 a true and correct copy of the foregoing instrument was forwarded via electronic delivery pursuant to the local rules or United States Mail pursuant to Federal Rule of Civil Procedure to the following:

Orlando Rodriguez
4900 Fournace Place, Suite 460
Bellaire, Texas 77401
efile@orodriguezlaw.com
*Attorney for Plaintiff*

s/ Daniel Plake