IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Felix Iraheta | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:26-cv-01355 |
| | § | |
| Montgomery County Texas; Deputy Joseph | § | |
| Michael O'Neill; Deputy Nicholas Anthony | § | |
| Scinicariello; Specialist Timothy J. Boerema; | § | |
| Deputy Davis (BWC 16104); John Doe (BWC | § | |
| 13603); John Doe (BWC 15438); John Doe | § | |
| (BWC 14218); Hospital/Scene John Doe | § | |
| Deputy; Jail John Doe Officers 1-2; Emily | § | |
| Waddington (LVN); Etuge Anyangwe (FNP-C); | § | |
| Zakari Lobe (LVN); Ather Siddiqi, MD; | § | |
| *Defendants.* | § | **Jury Demanded** |

**DEFENDANTS O'NEILL'S AND MONTGOMERY COUNTY'S MOTION FOR
JUDGMENT ON THE PLEADINGS AND BOEREMA'S MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE
GRANTED**

TO THE HONORABLE CHARLES ESKRIDGE:

Defendants Deputy O'Neill and Montgomery County file their *Motion for Judgment on the Pleadings* and Specialist Boerema files his *Motion to Dismiss for Failure to State a Claim Upon with Relief can be Granted* (collectively referred to as "MOCO" or "MOCO Defendants").

## INTRODUCTION OF THE DISPUTE

Iraheta does not challenge his DWI arrest. He alleges (1) excessive force during extraction from his vehicle, hospital escort, and blood draw, and (2) deliberate indifference to medical needs by the arresting deputy and jail medical staff. Defendants move for judgment on the pleadings and dismissal for failure to state a claim under Rules 12(c) and 12(b)(6).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................................4

NATURE AND STAGE OF PROCEEDINGS.................................................................5

FACTS NECESSARY FOR RESOLUTION OF THE MOTION ...................................6

*Relevant Facts alleged in the First Amended Complaint:* ...............................................6

*Documents referred to in the Complaint and central to Plaintiffs' case:*........................8

*Facts contained in public records:* ...................................................................................9

STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT ...................9

STANDARD OF REVIEW:...........................................................................................10

*FED. R. CIV. PRO. 12(b)(6):* ........................................................................................10

*FED. R. CIV. PRO. 12(c):* ............................................................................................12

*The qualified immunity standard:* ..................................................................................12

SUMMARY OF THE ARGUMENT ........................................................................12

ARGUMENT ........................................................................................................13

Issue 1:   Deputies pulling Iraheta out of the driver's seat of his car during a DWI stop and placing him in the rear of the police vehicle was reasonable considering Iraheta was an intoxicated driver who refused multiple commands to get out of the car and to sit in the police vehicle. ...................................................................................................13

*Iraheta's conclusions, in light of the video evidence, do not plausibly allege that Deputies used excessive force extracting him from the vehicle:* ....................................14

*Iraheta does not plausibly alleged that O'Neill violated clearly established law:* ........16

Issue 2:   Deputies did not use excessive force while walking Iraheta down the hallway to his hospital room. ....................................................................................................16

*Iraheta's conclusions, in light of the video evidence, do not plausibly allege that O'Neill used excessive force at the hospital:* ...................................................................17

*Iraheta only alleges de minimis injuries:* ........................................................................17

*Iraheta does not allege sufficient facts to overcome O'Neill's qualified immunity defense:* ..................................................................................................................................18

Issue 3:   Holding Iraheta's arm during a warranted blood draw does not amount to excessive force. ....................................................................................................................18

*Iraheta's conclusions, in light of the video evidence, do not plausibly allege that O'Neill used excessive force during the blood draw:* ......................................................18

*Iraheta only alleges de minimis injuries:* ........................................................................19

*Iraheta does not allege sufficient facts to overcome O'Neill's qualified immunity defense:* ..................................................................................................................................19

Issue 4:   County officers were not deliberately indifferent to Iraheta's serious medical needs considering he was released to jail by the emergency room doctor and the jail scheduled a follow up appointment for him the following day. ........................................19

*O'Neill did not act deliberately indifferent to Iraheta's serious medical needs by taking him to jail after the emergency room doctor cleared him to go to jail:* .........................19

*Montgomery County jail staff did not act with deliberate indifferent to Iraheta's serious medical needs:* ..................................................................................................................21

Issue 5:   Iraheta failed to alleged a valid failure to intervene case against Boerema or municipal claim against Montgomery County. ...................................................22

CONCLUSION ...........................................................................................................23

PRAYER .....................................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Dallas Cty. Tex.,* 286 F.App'x 850 (5th Cir.2008) (not published) .............20

*Arnett v. Webster, M.D.*, 658 F.3d 742 (7th Cir.2011)....................................................20

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ......................10

*Bailey v. Ramos,* 125 F.4th 667 (5th Cir.2025)..................................................................15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)10

*Brand Coupon Network L.L.C., v. Catalina Marketing Corp.,* 748 F.3d 631 (5th Cir.2014) .................................................................................................................... 8

*Brothers v. Zoss,* 837 F.3d 513 (5th Cir.2016)...........................................................15, 16

*Brown v. Glossip*, 878 F.2d 871 (5th Cir.1989) ................................................................11

*Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir.1996) .........................................10

*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994) .................................................................9

*Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496 (5th Cir.2000) ..............................8

*Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)............................21

*Fernandez-Montes v. Allied Pilots Ass'n*., 987 F.2d 278 (5th Cir.1993) .........................10

*Freeman v Gore*, 483 F.3d 404 (5th Cir.2007)..................................................................17

*Glenn v. City of Tyler,* 242 F.3d 307 (5th Cir.2001) .........................................................17

*Gobert v. Caldwell,* 463 F.3d 339 (5th Cir.2006) .......................................................19, 20

*Hogan v. Cunningham,* 722 F.3d 725 (5th Cir.2013).........................................................14

*Jackson v. City of Beaumont Police Depart.*, 958 F.2d 616 (5th Cir.1992)......................11

*James v. Sadler,* 909 F.2d 834 (5th Cir.1990)....................................................11

*Johnson v. Treen*, 759 F.2d 1236 (5th Cir.1985)................................................21

*Leatherman v. Tarrant County Narcotics Intel. & Coordination Unit*, 954 F.2d 1054(5th Cir.1992) ...................................................................................11

*Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)......22

*Perry v. Mendoza*, 83 F.4th 313 (5th Cir.2023) ................................................12

*Pratt v. Harris Cnty., Tex.*, 822 F.3d 174 (5th Cir.2016)....................................11

*Rolf v. City of San Antonio*, 77 F.3d 823 (5th Cir.1996) ....................................10

*Terrell v. Allgrunn*, 114 F.4th 428 (5th Cir.2024).............................................12

*Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429 (7th Cir.1993) .....8

*Waller v. Hanlon,* 922 F.3d 590 (5th Cir.2019) .................................................11

*Whitley v. Hanna,* 726 F.3d 631 (5th Cir.2013) .................................................22

*Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).........................21

*Wood v. Bexar County, Texas,* 147 F.4th 534 (5th Cir.2025) (cert. filed) ..................16, 18

*Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)....................21

**Rules**

FED. R. CIV. P. 12(b)(6)................................................................................10

FED. R. CIV. P. 12(c)..................................................................................11

FED. R. CIV. P.. 8(a)(2) ..............................................................................10

## NATURE AND STAGE OF PROCEEDINGS

Iraheta filed this suit on February 20, 2026, and his First Amended Complaint on February 23, 2026.  Montgomery County and Deputy O'Neill filed their Answer on March 24, 2026, this is their *Motion for Judgment on the Pleadings*, it is filed jointly with

Specialist Boerema's *Motion to Dismiss for Failure to State a Claim Upon with Relief can be Granted.*

## FACTS NECESSARY FOR RESOLUTION OF THE MOTION

*Relevant Facts alleged in the First Amended Complaint:*

1. Specialist Boerema stopped Iraheta on February 20, 2024, about 10:45 p.m., at 9595 Six Pines Drive, The Woodlands, Texas. *Doc. 4 at pgs. 11-12 ¶¶ 36, 38.* Specialist Boerema is a peace officer employed by the Montgomery County Sheriff's Office, who was acting under color of state law. *Id. at pg. 6 ¶ 16.* Iraheta does not challenge the basis for his DWI stop. *Id. at pg. 2 ¶ 2.*

2. Iraheta did not threaten officers, did not assault anyone, and was not making sudden movements. *Id. at pg. 14 ¶ 43A.*

3. Deputy O'Neill opened Iraheta's door, disengaged his seatbelt, and he and Deputy Scinicariello pulled Iraheta from his vehicle. *Id. at pg. 14 ¶ 45.* Deputy O'Neill is a peace officer employed by the Montgomery County Sheriff's Office, who was acting under color of state law. *Id. at pg. 6 ¶ 14.* Deputies used the car as leverage to pull Iraheta from the vehicle. *Id. at pg. 15 ¶ 46.* The method of extraction included the risk of dislocation and fracture. *Id. at pg. 15 ¶ 48.*

4. Iraheta's shoulder was immediately dislocated and he suffered "an associated fracture." *Id. at pg. 15 ¶ 47.*

5. Deputies' post-extraction use of force included: forcing Iraheta to the ground and then standing him up, handcuffing, and placing him into a police vehicle. *Id. at pgs. 15-16*

¶¶ *49-51*. Specialist Boerema was present during these events and could have requested prompt medical assessment. *Id. at pg. 16 ¶ 52*. Iraheta alleges his injury was apparent from both physical deformity and his behavior. *Id. at pg. 17 ¶ 52C*.

6. Iraheta made "verbal expressions of pain and requests for help" after he was placed in the rear of the police SUV. *Id. at pg. 17 ¶ 52D*. Iraheta continued complaining while Deputy O'Neill transported him to the hospital; O'Neill turned up the radio. *Id. at pg. 18 ¶¶ 53-54*.

7. Deputies did not notice Iraheta's injury until they arrived at the hospital, although Iraheta believes it was apparent. *Id. at pg. 18 ¶ 57*. Hospital records indicate he arrived "with a suspected left shoulder dislocation and required medical clearance." *Id. at pg. 18 ¶ 56*.

8. Deputy O'Neill used force to move Iraheta down the hospital hallway and to put him in a hospital bed "despite the absence of assaultive resistance." *Id. at pg. 20 ¶ 61*.

9. A nurse drew Iraheta's blood pursuant to a search warrant. *Id. at pg. 20 ¶¶ 62-63*. Deputy O'Neill used pressure to hold Iraheta's arm still during the blood draw. *Id*.

10. Doctors at the hospital treated Iraheta for his injury. *Id.* at pgs. 21-22 ¶¶ 65-66.

11. After the doctor discharged Iraheta and cleared him for jail, Deputy O'Neill woke Iraheta up, handcuffed him and took him to jail. *Id. at pgs. 22-23 ¶¶ 67-70*. Iraheta requested a "physician-ordered sling" even though he did not see the paperwork in which the sling was allegedly ordered. *Id. at pgs. 22-23 ¶¶ 69, 70*.

12. Jail and jail medical personnel screened Iraheta at the jail; he disagrees with the accommodations he received for his injury. *Id. at pgs. 23-24 ¶¶ 71-74.* Jail medical staff documented their knowledge of Iraheta's medical condition. *Id. at pgs. 24-24 ¶ 75*, see also *pg. 9 ¶ 24* (Waddington is a member of the medical staff).

13. Jail medical records indicate the jail created a "high-priority clinical follow-up task and/or appointment" for him on February 21, 2024 – the same day he arrived at jail – to occur on February 22, 2024. *Id. at pg. 26 ¶ 79.* Jail medical staff cancelled the appointment and did not reschedule it or follow up. *Id. at pg. 26 ¶ 80.* Iraheta went back to the hospital on February 22, 2024, where he had surgery. *Id. at pgs. 26-27 ¶¶ 81-83.*

*Documents referred to in the Complaint and central to Plaintiffs' case:*

14. Generally, the Court must limit itself to the Complaint and its attachments. *Brand Coupon Network L.L.C. v. Catalina Marketing Corp.,* 748 F.3d 631, 635 (5th Cir.2014). However, the Defendant may attach documents that "are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir.2000) (quoting *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 431 (7th Cir.1993)).

15. Defendants attach the following exhibits, which Iraheta refers to in the First Amended Complaint and which are central to his claims. Iraheta references multiple body-worn camera videos in his "Chronology Summary." *Doc. 4 at pg. 30.*

a. *Exhibit 1* – Video of Deputies removing Iraheta from his vehicle.   Iraheta references the content of body worn cameras throughout his motion, including alleging that it captured "critical moments in the extraction, handcuffing, and custodial placement sequence…" *Doc. 4 at pg. 15 ¶ 48A.*

b. *Exhibit 2* – Video of Deputy escorting Iraheta to his hospital room.   Iraheta references the body-worn camera capturing Deputies' treatment of him in the hospital.  *Doc. 4 at pg. 20 ¶ 59A.*

c. *Exhibits 3* – Video of force used to effect blood draw warrant.  Iraheta references the body-worn camera used to capture the blood draw.  *Doc. 4 at pg. 21 ¶ 63A.*

d. *Exhibits 4* – Videos of Iraheta's discharge from the hospital.  Iraheta references his exchange with O'Neill at discharge.  Doc. 4 at pg. 22 ¶ 68A.

e. *Exhibit 5* – Hospital discharge records.   Iraheta references these records as central to his claims.  *Doc. 4 at pg. 18 ¶ 56 and pg. 22 ¶ 68.*

*Facts contained in public records:*

16. The Court may take judicial notice of public records when deciding 12(b)(6) motions. See *Cinel v. Connick*, 15 F.3d 1338, 1343 N.6 (5th Cir.1994) (citations omitted).

a. *Exhibit 6 – Iraheta's bond.*  Iraheta posted bond on February 21, 2024.

**STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT**

**Issue 1:**    Whether Deputies pulling Iraheta out of the driver's seat of his car and placing him in the back of a police vehicle during his DWI stop was

reasonable considering he was an intoxicated driver who refused multiple commands to get out of the car.

**Issue 2:** Whether Deputies used excessive force while walking Iraheta down the hallway to his hospital room.

**Issue 3:** Whether holding Iraheta's arm during a warranted blood draw constitutes excessive force.

**Issue 4:** Whether County officers were deliberately indifferent to Iraheta's serious medical needs considering the emergency room doctor cleared him for jail and the jail scheduled a follow up appointment for him the following day.

**Issue 5:** Whether Iraheta's failure to allege a violation of his constitutional rights bars his failure to intervene claim against Boerema and his *Monell* claim against Montgomery County.

## STANDARD OF REVIEW:

*FED. R. CIV. PRO. 12(b)(6):*

A motion to dismiss for failure to state a claim should be granted when the claimant fails to demonstrate that he can prove any facts which would entitle him to relief. *Rolf v. City of San Antonio*, 77 F.3d 823, 827 (5th Cir.1996). The complaint must be liberally construed in the claimant's favor and all factual allegations taken as true. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir.1993). However, "[t]he court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save the complaint." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir.1996).

"[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (*citing* FED. R. CIV. P. 8(a)(2)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal at* 1950 (Citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  The Court may first determine which facts are entitled to the assumption of truth, and then consider whether those facts plausibly suggest an entitlement to relief.  *Iqbal at* 1951.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusion." *Iqbal at* 1949.  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*.

The individual officers are entitled to raise immunity as a defense to Plaintiff's § 1983 claims.  *Brown v. Glossip*, 878 F.2d 871, 873-74 (5th Cir.1989) and *Jackson v. City of Beaumont Police Depart.*, 958 F.2d 616, 620 (5th Cir.1992).  "One of the principal purposes of the qualified immunity doctrine is to shield officers not only from liability, but also from defending against a lawsuit." *Jackson, at* 620 (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 954 F.2d 1054, 1057 (5th Cir.1992).  "[Q]uestions regarding qualified immunity are resolved on the face of the pleadings and with limited resort to pre-trial discovery." *Jackson, at* 620 (quoting *James v. Sadler,* 909 F.2d 834, 838 (5th Cir.1990)).

*FED. R. CIV. PRO. 12(c)*:

"The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." *Waller v. Hanlon,* 922 F.3d 590, 599 (5th Cir.2019) (citation omitted).

*The qualified immunity standard*:

Plaintiffs must demonstrate that each Defendant, individually, violated his clearly established statutory or constitutional rights. *Pratt v. Harris Cnty., Tex*., 822 F.3d 174, 181 (5th Cir.2016). The concept of clearly established is central to qualified immunity. Plaintiffs must establish, by considering each Defendants' actions separately, whether a Defendant is shielded by qualified immunity. *Id*. For qualified immunity to be defeated, the constitutional right at issue must be clearly established at the time of arrest. To be clearly established, there must be existing precedent which must place the constitutional question "beyond debate" in the specific context of the case. *Perry v. Mendoza*, 83 F.4th 313, 319 (5th Cir.2023). Further, when evaluating qualified immunity, the court looks for "precedent [that] squarely governs the specific facts at issue. *Id*. If the law is not clearly established in the specific factual context of the case, qualified immunity applies. *Terrell v. Allgrunn*, 114 F.4th 428, 436 (5th Cir.2024).

## SUMMARY OF THE ARGUMENT

Deputy O'Neill arrested Iraheta for driving while intoxicated. Iraheta does not contest the arrest; he asserts numerous claims related to the force used to effect the arrest

and his treatment once he arrived at jail. The First Amended Complaint reliance on body camera videos makes them admissible at this stage, and the videos are dispositive.

Iraheta refused Deputies' orders to exit his vehicle; consequently, deputies pulled him out. At some point, his shoulder dislocated and he suffered a related fracture. The Deputies use of soft hand techniques to remove the intoxicated Iraheta from his vehicle did not constitute excessive force.

Deputy O'Neill took Iraheta to the hospital where Iraheta continued to refuse to obey simple commands such as "stand up" and "walk to your room." O'Neill used minimal force to escort Iraheta to his room, sit him on the bed, and assist the nurse in the warranted blood draw. Iraheta did not suffer any additional injuries. After the emergency room doctor cleared Iraheta for jail, Iraheta requested additional medical treatment including a sling. O'Neill's reliance on the doctor's treatment of Iraheta does not support a deliberate indifference to his serious medical needs cause of action.

O'Neill transported Iraheta to jail, where both jail and jail medical staff screened him. Based on his diagnosis contained in his hospital discharge paperwork, staff scheduled Iraheta for a follow up appointment for the next day. Iraheta apparently bonded out before that appointment, and returned to the hospital where he underwent surgery. The jail's screening and scheduling of a quick follow up treatment for Iraheta's know diagnosis does not support a deliberate indifference to his serious medical needs cause of action.

## ARGUMENT

**Issue 1:**     **Deputies pulling Iraheta out of the driver's seat of his car during a DWI stop and placing him in the rear of the police vehicle was reasonable**

> **considering Iraheta was an intoxicated driver who refused multiple commands to get out of the car and to sit in the police vehicle.**

Iraheta alleges officers used excessive force by pulling him from his vehicle during a DWI stop. *Doc. 4 at pg. 34.*

*Iraheta's conclusions, in light of the video evidence, do not plausibly allege that Deputies used excessive force extracting him from the vehicle:*

Iraheta's conclusion that the officers removing him from the vehicle constitutes excessive force is not entitled to be accepted as true. The videos he relies on for his allegations demonstrate that Iraheta has not and cannot state a valid claim for excessive force.

> To state a violation of the Fourth Amendment prohibition on excessive force, a plaintiff must allege '(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and that (3) the force used was objectively unreasonable.'" The objective reasonableness of the force depends on the facts and circumstances of the particular case—the need for force determines how much force is constitutionally permissible. The court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." The Supreme Court explained in *Graham v. Connor* that the reasonableness of the use of force must be judged from the perspective of a reasonable officer:"

*Hogan v. Cunningham,* 722 F.3d 725, 734 (5th Cir.2013) (internal citations omitted).

After developing reasonable suspicion to detain Iraheta for DWI, O'Neill commanded Iraheta to step out. *Ex. 1 at 22:50:57* (reference to time in lower right video). Iraheta said "no." *Id.* Deputies ordered Iraheta to get out of the vehicle a total of seven times prior removing him, with the seventh and last time being a three-count count down. *Id. at 22:50:59, 22:51:00, 22:51:03, 22:51:06, 22:51:07, 22:51:09.* Deputies then pulled Iraheta out by his left arm. *Id. at 22:51:11.* Iraheta said "hold on" while being pulled out.

*Id.* Iraheta was placed on the ground, and then stood up by two officers. *Id. at 22:51:12-20.* Iraheta said "there's no need to do this"… "what are you doing"…"this is exaggerated". *Id. at 22:51:21-54.* Iraheta refused field sobriety tests. *Id. at 22:51:00.* Iraheta briefly touched his left shoulder and said "you took me out of my car," but did not complain about any injury. *Id. at 22:52:04.* Iraheta said "I'm not doing anything" during cuffing. *Id. at 22:52:20.* While walking to the police vehicle, Iraheta said "that was violent"…"that was unnecessary." *Id. at 22:52:57-22:53:05.* Deputies instructed Iraheta to sit in the vehicle four times. *Id. at 22:53:12-16.* Iraheta, for the first time, told officers that his shoulder hurt. *Id. at 22:53:17.* Iraheta then told officers that they dislocated his shoulder. *Id. at 22:52:22.* A deputy responded "your shoulder is fine, sit in the car." *Id. 22:53:24.* After being told to sit in the car seven times, a Deputy lifted or pushed Iraheta into the back seat of the Tahoe. Id. at 22:53:29. Iraheta sat up and said "there's no need for that, my shoulder is dislocated." *Id. at 22:53:40.* O'Neill responded, "your shoulder is fine." *Id. at 22:53:44.* O'Neill buckled Iraheta into the back seat and closed the door. *Id. at 22:53:47-54.*

All three Graham factors weigh in the Deputies' favor. First, DWI is a serious offense. *Brothers v. Zoss,* 837 F.3d 513, 519 (5th Cir.2016). Second, a reasonable officer in the Deputies' positions could have perceived Iraheta as posing "potential danger to the officers and others" because "[a] motor vehicle can be used as a dangerous weapon, even when blocked in by a police cruiser." *Id.* (citations omitted) (applying *Graham* factors to extraction from vehicle of suspect in DWI and interfering with the duties of a public

servant). Third, even if Iraheta's refusal to comply with the Deputy's commands was passive resistance, "the officers were entitled to use only a proportional amount of force." *Id.* This is true, even if the subject is in handcuffs. *Bailey v. Ramos,* 125 F.4th 667, 684 (5th Cir.2025) ("use of force against a handcuffed suspect is not excessive if the suspect is resisting by ignoring lawful commands").

During the entire interaction, Iraheta did not comply with the Deputies' commands. Deputies' gave Iraheta each command multiple times before using force. Deputies did not strike, or choke Iraheta, nor did they use any weapons. Rather, Deputies used open hand techniques to gain compliance.

*Iraheta does not plausibly alleged that O'Neill violated clearly established law:*

Under the facts facing O'Neill, there is no clearly established law establishing that using soft hand techniques to remove a drunk driver from his vehicle by pulling on the driver's arm after the driver has refused multiple commands to exit the vehicle amounts to excessive force. To the contrary, the case establishes the opposite. The forced used by the O'Neill was less than the force found reasonable in *Brothers v. Zoss.* 837 F.3d at 519 (Officers drew their guns and used both hands to pull the suspect from the vehicle). Similar to the officers in *Brothers v. Zoss*, the Deputies used a single arm bar and pulled Iraheta out onto his chest and stomach. See *Id.*

Iraheta cannot meet his burden to overcome O'Neill's qualified immunity defense.

**Issue 2:** **Deputies did not use excessive force while walking Iraheta down the hallway to his hospital room.**

Iraheta alleges that Deputy O'Neill used excessive force by propelling him down the hallway at the hospital and "forced bed restraint." *Doc. 4 at pg. 36 ¶ 115.*

*Iraheta's conclusions, in light of the video evidence, do not plausibly allege that O'Neill used excessive force at the hospital:*

O'Neill told Iraheta multiple times to "stand up and walk to the room" while at the hospital. *Ex. 2 at 00:00:31-40.* O'Neill helped Iraheta to his feet using Iraheta's right arm (not his injured arm), and walked him to his hospital room. *Id. at 00:00:41-00:01:12.* Deputies then help Iraheta lay in the bed because he would not do so on his own. *Id. at 00:01:12-18.* O'Neill handcuffed Iraheta to the bed. *Id. at 00:01:25.*

"Force used against a pretrial detainee is 'excessive' in violation of the Fourteenth Amendment if it was 'objectively unreasonable.'" *Wood v. Bexar County, Texas,* 147 F.4th 534, 550 (5th Cir.2025) (cert. filed) (citations omitted). "To determine reasonableness, we weigh several factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting." *Id.* (citations omitted).

All factors weigh in favor of the Deputies. Iraheta was in custody at the hospital, he refused to follow the most basic and simple of commands, Deputies used minimal force to gain compliance, and Iraheta suffered no injury as the result of the force.

*Iraheta only alleges de minimis injuries:*

Iraheta does not allege that the hospital escort caused any injury beyond the initial shoulder injury.  "The injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed."  *Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir.2001).  The Plaintiffs must have "suffered at least some form of injury."  *Id.* (citations and quotations omitted).

*Iraheta does not allege sufficient facts to overcome O'Neill's qualified immunity defense:*

The level of forced used by O'Neill to gain compliance did not violate clearly established law.  Iraheta's allegations do not rise to the level of force declared *de minimis* by the Fifth Circuit in *Freeman v. Gore*.  The *Freeman* Court held that applying handcuffs too tightly, twisting the arrestee's arms behind her back, and jerking the arrestee "all over the carport" causing bruises and marks on the her wrists and arms was *de minimis*.  *Freeman v Gore*, 483 F.3d 404, 416-17 (5th Cir.2007).  The force used by O'Neill does not even come close to excessive force.

**Issue 3:**     **Holding Iraheta's arm during a warranted blood draw does not amount to excessive force.**

Iraheta alleges that Deputy O'Neill used excessive force by holding his arm during the warranted blood draw.  *Doc. 4 at pg. 36 ¶ 115*.

*Iraheta's conclusions, in light of the video evidence, do not plausibly allege that O'Neill used excessive force during the blood draw:*

While the nurse drew Iraheta's blood, O'Neill held Iraheta's arm in place.  *Ex. 3 at 00:24:51-00:30:04*.  Iraheta became increasing agitated during the blood draw.  *Id*.

The force used by O'Neill was objectively reasonable.  Iraheta was in custody in a hospital, he had refused to obey commands since the initial traffic stop all the way through

the time of the blood draw, Iraheta became increasing agitated during the blood draw, O'Neill used a simple hold on Iraheta's arm while the nurse drew blood, and Iraheta suffered no injury as the result of the force.

*Iraheta only alleges de minimis injuries:*

Iraheta does not allege that the act of holding his arm caused any injury beyond the initial shoulder injury.

*Iraheta does not allege sufficient facts to overcome O'Neill's qualified immunity defense:*

Iraheta cannot point to clearly established law making it unlawful for an officer to hold a DWI suspects arm during a warranted blood draw.  See *Wood,* 147 F.4th, at 550 (analyzing use of force in blood draw case).

**Issue 4:** **County officers were not deliberately indifferent to Iraheta's serious medical needs considering he was released to jail by the emergency room doctor and the jail scheduled a follow up appointment for him the following day.**

Iraheta alleges that jail staff were deliberately indifference to his serious medical needs after he was cleared for jail by the emergency room doctor.  *Doc. 4 at pg. 38.*

*O'Neill did not act deliberately indifferent to Iraheta's serious medical needs by taking him to jail after the emergency room doctor cleared him to go to jail:*

Iraheta alleges that O'Neill acted deliberately indifferent to his serious medical needs by refusing to provide a sling to stabilize Iraheta's shoulder at discharge.  *Doc. 4 at pg. 38 ¶ 124.*

"A prison official acts with subjective indifference if: (1) he knows that an inmate faces substantial risk of serious bodily harm; and (2) he disregards that risk by failing to

take reasonable measures to abate it." *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir.2006).

Doctors at the hospital treated Iraheta for his injury. *Doc. 4 at pgs. 21-22 ¶¶ 65-66.* After the doctor discharged Iraheta and cleared him for jail, Deputy O'Neill woke Iraheta up, handcuffed him and took him to jail. *Doc. 4 at pgs. 22-23 ¶¶ 67-70.* Iraheta requested a "physician-ordered sling" even though he did not see the paperwork in which the sling was allegedly ordered. *Doc. 4 at pgs. 22-23 ¶¶ 69, 70.* There is no indication in the video or the discharge paperwork that the doctor provided or prescribed a sling to Iraheta. *Ex. 4 at 1:15:30-54.* O'Neill told Iraheta that he might be able to get a sling from the jail. *Id.* In response to Iraheta's request to see the doctor again about a sling, a nurse in the room told Iraheta that the medications should help with his pain; she did not offer a sling. *Id. at 1:16:30.* The discharge paperwork does not indicate that the doctor prescribed a sling. *Ex. 5 at pg. 2.* The only reference to use of a sling are in the "educational materials" attached to the discharge paperwork; which indicates slings "may" be provided. *Id. at pg. 5 "If you have a brace or sling" (patients should wear a sling as told by their health care provider), and pg. 8 "What happens after the procedure" and "Summary" (patient "may be sent home with a sling").*

Iraheta's claims against Deputy O'Neill fail because it was reasonable for Deputy O'Neill to rely on the emergency room doctor to treat Iraheta and clear him for jail. See *Arnett v. Webster, M.D.*, 658 F.3d 742, 755 (7th Cir.2011) (citations omitted) ("[A] non-

medical prison official will generally be justified in believing that the prisoner is in capable hands.")

*Montgomery County jail staff did not act with deliberate indifferent to Iraheta's serious medical needs:*

Iraheta alleges that the jail's medical intake failed to adequately provide for screening and follow up care for his injury.  See *Doc. 4 at pg. 41 ¶ 130*.   He asserts that these failures amount to deliberate indifference.  *Id. at ¶ 131*.

To establish Montgomery County's liability for failure to protect under an "episodic act or omission" theory, Iraheta must show that: (1) a county employee violated his clearly established constitutional rights with *subjective* deliberate indifference, and (2) the violation resulted from a county policy or custom adopted or maintained with *objective* deliberate indifference.  *Anderson v. Dallas Cty. Tex.,* 286 F.App'x 850, 860 (5th Cir.2008) (not published).   "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."  *Gobert,* 463 F.3d. at 346 (citations omitted); see also *Estelle v. Gamble*, 429 U.S. 97, 107-08, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).   As long as the medical personnel treating Plaintiff exercised professional medical judgment, their behavior did not violate Plaintiff's constitutional rights.  See *Youngberg v. Romeo*, 457 U.S. 307, 322-23, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).  The Defendants must have refused to treat the Plaintiff, ignored Plaintiff's complaints, intentionally treated Plaintiff incorrectly, or "engage in any similar conduct that would

clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985).

Jail and jail medical personnel screened Iraheta at the jail and documented their knowledge of Iraheta's medical condition. *Doc. 4 at pgs. 23-24 ¶¶ 71-75*, see also *Doc. 4 at pg. 9 ¶ 24* (Waddington is a member of the medical staff). Jail medical staff scanned his outside medical records into his chart. *Doc. 4 at pg. 25 ¶ 77A*. Jail medical records indicate the jail created a "high-priority clinical follow-up task and/or appointment" for him on February 21, 2024 – the same day he arrived at jail – to occur on February 22, 2024. *Doc. 4 at pg. 26 ¶ 79*.

Iraheta curiously alleges that jail medical staff cancelled the follow up appointment and did not reschedule it or follow up. *Doc. 4 at pg. 26 ¶ 80.* It appears from the pleadings and his bond that Iraheta bonded out of jail prior to the appointment. See *Ex. 6* (bond paid on 2/21/24) and *Doc. 4 at pgs. 26-27 ¶¶ 81-83* (Iraheta went back to the hospital on February 22, 2024, where he had surgery.)

Considering that Iraheta alleges he was treated and cleared by an emergency room doctor prior to his arrival at jail, that jail and jail medical staff knew of and considered his diagnosis, and that they scheduled a follow up appointment for the for the next day; Iraheta cannot show that any County employee treated him with deliberate indifference to his serious medical needs.

**Issue 5:**       **Iraheta failed to alleged a valid failure to intervene case against Boerema or municipal claim against Montgomery County.**

Iraheta's failure to intervene claim against Specialist Boerema and Monell claim against Montgomery County fail for the same reason – he failed to demonstrate a that a violation of his Constitutional rights occurred. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir.2013) (bystander liability) and *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (municipal liability).

## CONCLUSION

Because Iraheta failed to state a valid cause of action against the Montgomery County Defendants, they seek dismissal with prejudice pursuant to Rules 12(b) and 12(c).

## PRAYER

Defendants pray this Court dismiss all causes of action against them with prejudice, and for all other relief to which it may be entitled.

Respectfully submitted,

BY:____s/ Daniel Plake_____
Daniel Plake
Assistant Montgomery County Attorney
Texas Bar No. 24062942
Federal ID No. 918023
Daniel.plake@mctx.org
501 N. Thompson St. Suite 100
Conroe, TX 77301
Phone:       (936) 539-7828
Facsimile:   (936) 538-8079
ATTORNEY FOR DEFENDANTS
MONTGOMERY COUNTY, O'NEILL,
AND BOEREMA

## CERTIFICATE OF CONFERENCE

I conferenced with opposing counsel by both email and over the phone regarding this motion.  He is opposed to relief sought.  I offered him the opportunity to replead prior to filing the motion, he did not accept that offer.

s/ Daniel Plake

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2026 a true and correct copy of the foregoing instrument was forwarded via electronic delivery pursuant to the local rules or United States Mail pursuant to Federal Rule of Civil Procedure to the following:

Orlando Rodriquez
4900 Fournace Place, Suite 460
Bellaire, Texas 77401
efile@orodriguezlaw.com
*Attorney for Plaintiff*

s/ Daniel Plake

## CERTIFICATE OF WORD COUNT

I hereby certify that this document contains 4,890 words as calculated by Word, excluding the case caption, table of contents, table of authorities, signature block and certificates.

s/ Daniel Plake