**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

Civil Action No. 4:26-cv-01355

_____

# REVISED EXHIBIT 1

Admissions Chart

(Side-by-Side: Confirmed Facts and Defendants' Answer Admissions)

_____

<u>**Revised Exhibit 1**</u>

**Admissions Chart: Confirmed Facts and Verbatim Answer Responses**
*Iraheta v. Montgomery County, Texas, et al.*, Civil Action No. 4:26-cv-01355 (S.D. Tex.)

| Confirmed Undisputed Fact | Verbatim Answer Response (Doc. 10) |
|---|---|
| **Group A: Parties / Jurisdiction / Institutional Structure** | |
| **1. Montgomery County, Texas is a political subdivision and suable entity.** *FAC ¶10; Doc. 10 ¶10* | "Admit." |
| **2. Final policymaking authority for law-enforcement and jail-custody practices rested with the Sheriff of Montgomery County during the relevant period.** *FAC ¶11; Doc. 10 ¶11* | "Admit." |
| **3. Defendants Waddington, Anyangwe, Lobe, and Siddiqi provided and/or oversaw medical care for detainees at the Montgomery County Jail during the relevant period.** *FAC ¶24; Doc. 10 ¶24* | "Admit." |
| **4. This Court has subject-matter jurisdiction over the claims forming the basis of this suit.** *FAC ¶33; Doc. 10 ¶33* | "Admit this Court has subject mater jurisdiction over the claims forming the basis of this suit." |
| **5. MCSO maintains records and reports relating to the incident and custodial sequence described in the First Amended Complaint (admitted generally).** *FAC ¶6; Doc. 10 ¶6* | "Admit generally." |

| Group B: Scene / Pre-Extraction | |
| --- | --- |
| 6*.  At the moment the extraction was initiated, Plaintiff did not threaten the deputies, did not attempt to drive away, and did not make any sudden movements consistent with flight or assault.<br>*FAC ¶43(a); Doc. 10 ¶43(a)* | "Admit, aver this considerations are not relevant to a soft hand extraction of a non-compliant drunk driver sitting behind the wheel of his car." |
| 7.  After the extraction and before placement into the patrol vehicle, Plaintiff was brought to standing in close proximity to multiple deputies.<br>*FAC ¶52(a); Doc. 10 ¶52(a)* | "Admit." |
| Group C: Extraction | |
| 8*.  On February 20, 2024, Plaintiff was extracted and/or forcibly removed from his vehicle by law enforcement officers, including Deputy Joseph Michael O'Neill.<br>*FAC ¶¶1, 94; Doc. 10 ¶¶1, 94* | ¶1: "Admit that officer extracted Iraheta from this vehicle in their capacity as law enforcement officers, the date, and that Iraheta suffered a dislocated shoulder, deny the remainder."<br><br>¶94: "Admit time and date, admit officer's basic position, admit officers forcibly removed Iraheta, deny the remainder." |
| 9*.  The B-pillar is used as a leverage point during the extraction.<br>*FAC ¶¶106, 110; Doc. 10 ¶¶106, 110* | ¶106: "Admit the B-pillar is used as leverage (which the Plaintiff may be referring to as the frame), deny the remainder."<br><br>¶110: "Admit the B-pillar is used as leverage (which the Plaintiff may be referring to as the frame), deny the remainder." |
| 10*.  Plaintiff's left glenohumeral dislocation occurred while Plaintiff was in custody.<br>*FAC ¶3; Doc. 10 ¶3* | "Admit the glenohumeral dislocation occurred while Iraheta was in custody, deny it occurred during extraction, cannot admit or deny the fracture, deny the remainder." |

| Group D: Transport | |
|---|---|
| **11.  Deputy O'Neill obtained a blood-search warrant.**<br>*FAC ¶62; Doc. 10 ¶62* | "Admit." |
| **12*.  During transport, Deputy O'Neill was listening to music.**<br>*FAC ¶54; Doc. 10 ¶54* | "Admit O'Neill was listening to music, deny he turned it or that it impaired Iraheta's ability to communicate. Deny Iraheta could not communicate distress and aver he was being transported to the hospital." |
| Group E: Hospital | |
| **13*.  At the hospital, another officer noticed an apparent issue with Plaintiff's shoulder.**<br>*FAC ¶55; Doc. 10 ¶55* | "Deny Iraheta's injury was obvious, but admit another officer noticed an apparent issue with his shoulder." |
| **14*.  Deputy O'Neill used Plaintiff's other arm to guide Plaintiff to his assigned hospital room.**<br>*FAC ¶¶60, 98; Doc. 10 ¶¶60, 98* | ¶60: "Admit O'Neill used Iraheta's other arm to guide him to his assigned hospital room because Iraheta continued to refused simple commands such as stand up and walk to your hospital room."<br><br>¶98: "Admit O'Neill had to guide Iraheta to his hospital room because he continued to refuse simple commands such as 'stand up' and 'walk to your hospital room', deny the remainder." |
| **15*.  Deputy O'Neill moved Plaintiff's legs onto the hospital bed.**<br>*FAC ¶¶61, 99; Doc. 10 ¶¶61, 99* | ¶61: "Admit O'Neill moved Iraheta's legs onto the bed, deny it was anything other than de minimis force and deny that Iraheta was compliant. Further deny Iraheta's reliance on 'assaultive resistance' as any sort of relevant metric."<br><br>¶99: "Admit O'Neill had to place Iraheta's feet on the bed because he refused to, and that O'Neill had to restrain Iraheta's arm for the blood draw because Iraheta |

| | |
|---|---|
| | continuously pulled it away from then nurse." |
| **16\*.  During the blood draw, Deputy O'Neill held and/or restrained Plaintiff's arm.** <br> *FAC ¶¶63, 99; Doc. 10 ¶¶63, 99* | ¶63: "Admit O'Neill had to hold Iraheta's arm, but deny it was disproportionate to need or excess; rather Iraheta continued to resist and pull his arm away from the nurse." <br> ¶99: "Admit O'Neill had to place Iraheta's feet on the bed because he refused to, and that O'Neill had to restrain Iraheta's arm for the blood draw because Iraheta continuously pulled it away from then nurse." |
| **17.  Plaintiff was diagnosed on February 21, 2024 with a left shoulder dislocation and humerus/greater tuberosity fracture; a closed reduction was performed; and immobilization by sling was ordered.** <br> *FAC ¶65; Doc. 10 ¶65* | "Admit." |
| **Group F: Discharge** | |
| **18.  Hospital staff provided discharge paperwork to Deputy O'Neill, and Deputy O'Neill signed for receipt.** <br> *FAC ¶68(a); Doc. 10 ¶68(a)* | "Admit." |
| **Group G: Jail Intake / Medical Charting** | |
| **19.  Intake screening documentation completed by Defendant Waddington documented "serious injury/hospitalization in last 90 days" and described "dx Shoulder."** <br> *FAC ¶75; Doc. 10 ¶75* | "Admit." |
| **20.  Hospital paperwork was scanned into Plaintiff's jail medical chart.** <br> *FAC ¶¶77, 78; Doc. 10 ¶¶77, 78* | ¶77: "Admit." <br> ¶78: "Admit the paperwork from the hospital was scanned in. Admit the jail medical staff would have known that the hospital doctor cleared Iraheta for jail." |

| | |
|---|---|
| **21\*. Jail staff created an appointment for the next day and later canceled it.** *FAC ¶¶79, 80; Doc. 10 ¶¶79, 80* | ¶79: "Admit the jail and or jail medical staff immediately created an appointment for Iraheta the next day." ¶80: "Admit, the appointment was cancelled, and aver it was cancelled because Iraheta was released from jail on 2/21/24, before the appointment was to occur. Deny the remainder." |
| **Group H: Municipal Context** | |
| **22. Deputy O'Neill has been publicly recognized at the Vehicular Crimes Awards ceremony for calendar years 2022, 2023, and 2024.** *FAC ¶85; Doc. 10 ¶85* | "Admit." |

*\* Items marked with an asterisk reproduce the complete Answer response (including denials/qualifications) without ellipses.*